Good morning, Your Honors. Anthony Dreyer on behalf of Appellant Del Monte International, and I'd like to reserve three minutes rebuttal time. May it please the Court, this case presents an issue of first impression. Can top-level domain name disputes be pursued and litigated under the Anti-Cyber Squatting Consumer Protection Act, known as ACPA? You're not actually trying to litigate it under that act. You're trying to litigate it under the Declaratory Judgment Act, right? We are, Your Honor, and typically that's how these cases are presented. There's no affirmative ACPA claim. What is sought, depending on whether, which side you're on, is a declaration that the domain name should be owned by the applicant or should not be owned by the applicant. And in holding that ACPA does not permit review of a WIPO decision to sustain an objection to a top-level domain name, yet would be likely available if the objection was overruled, the District Court committed error. And specifically, the District Court erred in holding that ACPA is only available if the domain name at issue is entered into the registry's root zone. That is a requirement that appears nowhere in the statute. Can I return to your last answer to my question, though? Because why would you use the Declaratory Judgment Act if you were actually pursuing this type of reverse, whatever you call it, hijacking? I mean, the statute says you can be liable in a civil action. It seems to create a right of action for that situation. It wouldn't seem like you would need the Declaratory Judgment Act, and you could bring it under that if you were, if you fell within the terms, couldn't you? In my experience, it's brought as a declaration that the domain name should be properly issued, that it was a violation of ACPA. I can't say that it can't be brought as a separate claim under 1114 2D5, but I think it's certainly proper that it was brought as a argument on behalf of foods, that it wasn't properly brought as a declaratory judgment. Well, I think they are arguing that. They're saying you don't have, there's no relief available under the Declaratory Judgment Act because the relief you're seeking doesn't give you all the relief that would resolve the claim, which is a requirement of the Declaratory Judgment Act, that it wouldn't be a requirement of ACPA. Well, I think we would be entitled to relief, and I think with respect to the mootness argument, certainly WIPO and ICANN have recognized in GTLD proceedings that the parties would have available to them judicial remedies. We believe if we got a determination that the objection was improperly sustained, at a minimum, we could take that back to ICANN and they would issue the domain name and the moot would go into the registry. In addition, even if that weren't the case, this is... You haven't really asked for a declaration that, the wording you just used is not the wording that's in the complaint. I mean, that the objection was improperly sustained is not really what you asked for. You asked for something that you haven't violated ACPA, but if we think that this provision of ACPA doesn't apply, then yeah, you haven't violated ACPA and you also haven't violated the statute we were talking about in the last case. That doesn't get you anywhere if you're trying to actually resolve whether the next case should have an objection granted. There's a disconnect here that I think really is a problem for you under the Declaratory Judgment Act, and I don't know how you get around that. Well, respectfully, I think what we were seeking goes to the heart of the WIPO decision. So the decision was that Del Monte International... I'll come back to that, because I'm not too sure that's true either, but continue the current answer. Sure. The decision was that Del Monte International could not own the TLD.DelMonte because one, it lacked bona fide rights in the Del Monte trademark, and two, owning the .DelMonte trademark, top level domain name rather, would violate the party's license agreement. So we are certainly seeking declarations that neither of those are the case, because in fact, International owns a perpetual worldwide right to use the Del Monte mark honor and connection with, among other things, fresh fruit and fresh vegetables. And it, in fact, owns many, many domain names with the Del Monte trademark as part of it. And so our belief is if those issues are resolved as part of the declaratory judgment that we seek, at a minimum, that would clarify future proceedings that would be capable of repetition but escaping review. And we also think that would be persuasive authority for ICANN to go ahead and register, to enter the domain name in the root zone. There are eight factors that would be considered for an LRO objection. If this ever happened again, there are eight factors. You have, at most, three, probably not even, in your complaint. I don't know how you think that the relief that you're asking for in your complaint would resolve the entirety of what would happen if this ever comes up again? Well, respectfully, the two principal factors on which the majority, it was a two to one decision, the majority of the WIPO panel ruled was that International lacked bona fide rights to the mark and that by applying for the Del Monte TLD, we somehow violated the party's license agreement and a separate declaration that we seek in the amended complaint, that our ownership of the mark in South Africa, which is really not in dispute by Del Monte TLD, would not read the panel decision in the same way that you do. I think they're commenting on a higher level. The South Africa references there and some, I don't know that they're saying that your client doesn't have ownership in South Africa, but it suggests the circumstances in South Africa are a little odd. And frankly, they were. It's all a result of apartheid. I think they're saying, and you look at the conclusion, it seems pretty strong to me on a broader level, look, this is structured with lots of entities having rights to this name and the entity that has the oldest rights and sits kind of above isn't your client, it's the party on the other side of the room. And so they're simply not prepared to give your client exclusive rights to this top level domain name. I don't see how the declarations which are being sought in the complaint require the panel to say, oh, the scales have been lifted. I'm not sure, I kind of share Judge Friedland's concern that there's a disconnect here that needs to be addressed. And I'll add one more to it, and then I'll give you a chance to respond. You mentioned capable of repetition. This comes back again, I suspect you're not going to be the only applicant for this name. And so the posture of the case at that point strikes me as being very different from the posture of the case that's already been concluded. So why do we wade into this thicket if it's not clear it's actually going to solve any problems? Well, I do think it will solve several problems, including the ones I've identified. This past go-around, we were the only applicant. Food did not submit its own application. It simply played the role of a spoiler. And I think these issues very likely would come up again when, and I don't think it's a question of if, I think it's a question of when ICANN offers a second round of GTAs. But the posture will be different, because they've spent enough time and money to get here. I've got to assume at that point they'll put their own application in. They may. And among the arguments I suspect them to make would be the arguments that prevailed on the majority of the WIPO panel, which are that our contract with them bars our application and ability to Well, no, they'll just say, we are the original Del Monte, and we want this domain name, and they'll probably get it. Well, but there are other WIPO decisions involving an owner and a licensee, the Merck case that we cite, where that was the exact posture. And the licensee in that case was awarded the top-level domain name. So I don't think So that suggests we don't know all the parameters. That issue is not ripe for adjudication. Why should we intervene at this point for a future proceeding, the context, the procedural posture of which we don't know yet? Well, I think what it suggests is an inconsistency in the WIPO panels. And that inconsistency is exactly why Congress granted both parties to a domain name dispute a judicial avenue under ACPA to seek relief. If international lost, it should have a right under 15 U.S.C. 1114d to prevent what we believe is reverse domain name hijacking. Just as Were you ever a registrant of Del Monte? I think the term registrant and registration, which are not defined in the statute, should be broadly construed in conjunction with Congress's purpose to give both parties judicial avenue, certainly consistent with this Court's decision in Gopetz I mean, you have a really good argument to lobby Congress to say what you tried to do before really extends to our situation. You need an amendment. But I don't see how the language that Congress already drafted covers your situation, especially when your situation I don't think even existed when Congress drafted this. I mean, this type of domain name wasn't even contemplated. I think that's absolutely true, Your Honor. But this Court and Congress, the Supreme Court, have made clear that in construing statutes, courts should be very reluctant to limit their application to technologies and processes in place at the time. But it's not just a technology question about generic top-level domain. The statute talks about registrant and whose domain name has been suspended, disabled, or transferred, which is distinct from denying an application registration. The statute itself, at section D-1B-I-7, I think it is, talks about and makes reference to those applying for registration. I mean, the word registration is used throughout in other parts of the statute, but it's not used in the same way. An applicant for registration is different from somebody who owns a registration and has that suspended. It seems to me the plain language is plain. Well, I don't think it uses applicant to narrowly define a party who's seeking a domain name. They could have easily said a domain name, you know, registrant, or an applicant for a domain name whose application was denied as a result of an objection, but it didn't say that. It doesn't say that. No, it could have, Your Honor, but I think consistent with this Court's decision in Gopetz, the Court should not narrowly adopt a definition of registration that is simply limited to the domain name entering in the root zone. In that case, the Court recognized there were a host of conceivable actions that could fit the definition of registration, including in that case the initial agreement between the applicant and the registrar. There was certainly an initial agreement in this case between Del Monte International and ICANN. Well, I want to stop you on that, and I'll confess it's something that kind of grates on me. Your brief tells us on page 31, the district court acknowledged the plaintiff, quote, entered into a contract with ICANN by submitting its application for the Del Monte GTLD, close quote, and then it cites to ER 53. Do you happen to have ER 53 in front of you? I can get it. Yes, Your Honor. Quotation appears to come from the second sentence of the first full paragraph. And the quotation, the words in the quotation that are not included are, plaintiff alleges that. That doesn't strike me as a finding of the district court. Well, I think that's — it's coupled with the next sentence that begins on line 7. But even so, ICANN never mentioned it. Exactly. I mean, lots of times we acknowledge there's this argument, but we don't speak to it because there's another reason why we don't have to. And I'm sure there was no intent, but I was really surprised to find the brief representing to us the Court found something when, in fact, it seems to me all the Court was doing was reciting the allegation of the party and saying it didn't have to answer the question. So, like I say, it graded on me, and it's not what I really expect from your office. I understand, Your Honor, and that certainly wasn't the intention. And I don't think there's really any dispute in this case. There was an initial TLD, top-level duty lawyer. Well, there's certainly an application, but the notion that there's somehow a contract and we should take that contract and view that as the same as a registration, that's kind of a bridge too far. Well, I think it is clearly a contract with binding terms and conditions. International paid $180,000. That agreement incorporates the TLD guidelines. I mean, at most, the contract is to have your application reviewed, which it was and was denied, right? What is your point that you had a contract? What does that get you? Well, I think it's part of a broader registration process, and I don't think the statute, consistent with Congress's intent to permit parties who are unsuccessful in a domain dispute proceeding the availability of judicial review of that decision. If I may briefly turn, since I'm short on time, to the issue of amendment. So can I ask you just right off, because you're running out of time? Sure. If we dismiss this, it seems to me we have a lot of reasons that we might dismiss this for lack of jurisdiction. If we do that, you automatically get leave to — it's without prejudice. Dismissal for lack of jurisdiction is always without prejudice. So do we even have to talk about leave to amend if that's the direction we're going? I think if it's clear from the court that international would not be barred by any notion of res judicata or estoppel from filing a separate cause of action that asserts the breach of contract claims, which relate to the filing of the legal rights objection, not the ACWA decision, or the violation of the covenant of good faith and fair dealing, which we believe deprived us of the rights under that agreement to pursue the domain name, and we're not barred from seeking a declaration that the contract doesn't bar us from owning the market in South Africa, then I don't think that's as critical an issue. So say we didn't dismiss for lack of jurisdiction and somehow we did this on some kind of merits. It seems to me that you probably do have some kind of contract action in diversity that's totally — seems pretty different to me than what you did here already. Would you need leave to amend or is that just a different case? I mean, can you tell me why you're worried about this leave to amend issue? I think the advantage of leaving to amend is it would give us, if the ACWA claims were to stay in the case, it would give us — Say we think they have no hope of staying in the case. Then do you need leave to amend? I don't think we need leave to amend so long as we're not barred from bringing those claims, Your Honor. Thank you. I'll reserve the rest of my time. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Eric Chomsky representing Del Monte Foods. Let me start, if I can, where Judge Friedland and Judge Clifton, you did. I think, Judge Friedland, the word you used was disconnect, and I think that's an apt way to view it. The relief that's sought here at ER 196 in the prayer for relief in the original complaint is this sort of scattershot declaratory relief that the Supreme Court in the Calderon case and this Court in Citizens for Honesty and Integrity have said, just don't give you a case or controversy in a really basic Article III kind of way, and that obviously would be on its own ample basis to affirm. On the merits of the statutory construction issue, Judge Chen, I think you put your finger on the key here. Whatever one thinks about the term registrant, and there are very good reasons, both in this Court's discussion of the term and Office Depot, but frankly, even if one just looks at Webster's dictionary to conclude that an applicant and a registrant are very different things, even if one gets past that, it is very hard to see here how anything was suspended or disabled or transferred, and it seems that on the merits of the issue, there's just not a Section 1114 claim here, and either or both of those would be ample basis to affirm. No, go ahead. What would be the rationale, not saying we need to look to it, but what would be the rationale, policy basis for distinguishing between allowing judicial review where a registrant loses, has the domain name suspended as a result of opposition, as opposed to an applicant having been denied in the first instance? Why should there be judicial review in one instance and not the other? Is there a reason? There are multiple reasons that Congress might conclude that it's absolutely appropriate to draw that distinction, Your Honor. Among other things, the world of the second-level domain names is just a totally different world than the third-level domain names. What Congress was worried about... I'm assuming it applies to generic top-level domain. I mean, I know there's a dispute about it. Let's say it does apply. I'm just saying the difference between the applicant and a registrant, an existent registrant... Right, so again, a couple of reasons, Your Honor. First of all, it's far from clear that there actually would be an 1125 cause of action in the ordinary case. Remember that the standard there... And this goes back to the question about the disconnect, Judge Friedland. The standard there is, among other things, bad faith, but what goes on in WIPO is something far less than bad faith. The decision here, it's at ER 147, I believe, says something less than bad faith is required. So as an initial matter, it's far from clear that in the ordinary case you'd even have an 1125 action that would operate. Second, even if you did, the reason that Congress might distinguish between an 1125 action and an 1114 action for the top-level domain names goes to the question of reliance interests. Recall that with regard to second-level domains, they were issued automatically. Everyone got them. That was the whole problem, is that they were being given out like candy. In the 1125 context, someone actually gets something here, and then there's a question about whether or not they're cyber-squatting. In the 1114 context, all you are is an unsuccessful applicant who never got anything. I mean, that goes to your question, Judge Clifton, about the initial contract here, and your follow-up question, Judge Friedland. There's no binding contract. It's absolutely clear. I can and WIPO say in plain terms, you're not guaranteed to anything. We don't have to give you anything at all. And so, Judge Chen, the hypothetical Congress that might be reconsidering this anew certainly wouldn't conclude that it's absurd to think that 1125 and 1114 are treated differently. And, of course, that's the relevant standard here, is whether the plain language of the statute would get us to a place that is so absurd that Congress possibly, or couldn't possibly, accept that result. Say we agree with you on all of this. What about leave to amend? Can you talk about whether, why they don't have a claim, some kind of contract claim in diversity? Because it seems like they probably do, and I'm struggling with whether we need to remand for leave to amend so they can amend that and allege that, or whether, really, they can just do that anyway. Judge Friedland, I think that Judge Liu exercised sound discretion here in denying leave to amend for multiple different reasons. One is that what they were seeking was a second bite at the apple. And that's true regardless of the basis on which one affirms here. I point the Court to the language in the Allen decision. A district court does not abuse its discretion in denying a motion to amend a complaint when the movement presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop it. Well, they also have law saying that if it wouldn't be futile to amend, then you should have a chance. And it seems like they have shown there probably is diversity, and they have some contract claim. And it's pretty different, I think, than what they did here. But they may have some case they could bring. And I think they're supposed to be given leave to amend if there is such a case. Now, maybe this is different because the case they want to bring is so different than what they brought that it's just a different case and doesn't need to be brought in this matter number. Can you respond to that concern? I think the last part of what you just said, Judge Friedland, is the nub of it. If you look at the Allen case, it lays out the five bone-in factors, including things like futility. And then the language that I was quoting comes at the end of all of that. And whether you consider it an overlay that sort of pulls in questions of delay and prejudice or a separate sixth factor, Allen is absolutely clear that when you are just coming in with a brand-new legal theory that it's a new effort to reinvigorate your case, a district court doesn't abuse its discretion when it says, no, that's too late. But is it too late, like they're going to be barred from bringing some other case about some other issue? I mean, what are the estoppel effects of this action? I mean, the filing fee for filing a complaint in U.S. district court isn't what's at issue in this case. What difference would it make? Well, so the difference that it would make, I think, is laid bare by the prayer for relief in the second, or in the proposed amended complaint. And so it's very clear that what they are seeking is not $185,000. What they are again seeking is a whole series of scattershot declarations that have exactly the same Article III problems as the original complaint. And so, Judge Friedland, whether you think about this under the Allen language that I quoted, or in addition, if you think about it in terms of futility, it would be futile to amend here precisely because what they're looking for is the same sort of non-disposable relief. Maybe they still haven't gotten it right in this proposed amended complaint. But what would be wrong with a complaint that said there's diversity and we have a theory that our license agreement precludes Del Monte from ever complaining to ICANN? So some other hypothetical litigant who hadn't already gotten their bite at this apple perhaps might be able to bring that complaint. So you do think there's a stopple? You think if that theory is what they want to pursue, they had to bring it in this action? I think there might be. I mean, obviously, that's something that we would fight out if a brand-new complaint is raised. But it would be a very odd world in which the Allen rule says you don't get a second bite at the apple to bring a proposed amended complaint when all you're doing is bringing new legal theories. But, by the way, it's okay just to file a brand-new lawsuit. But you're not asserting that this legal theory that Judge Friedland just proffered would be, on its face, one that should be dismissed. In other words, you're not claiming futility. You're claiming the judge had authority to exercise discretion to say no second bite at the apple, not that it would be futile. You would admit that there's a potentially viable claim for breach of contract. I'm saying both things, but I want to be very clear about what I mean by it. The complaint here, the proposed amended complaint here, is futile because the declaratory relief that they seek suffers from all of the same Article III problems as their original complaint. A completely hypothetical... Okay, let's put aside this one. Let's talk about the hypothetical complaint. A completely hypothetical litigant in some other case very well might be able to bring a breach of contract claim in which they say the parties are diverse, we've met the amount in controversy, here's our contract, you've breached a term of it. But that is all purely hypothetical. What we have here is a litigant who didn't pursue that theory. But they could potentially. So if we're talking about futility, it seems like it's not futile. They could be that hypothetical litigant. What prevents them from being that hypothetical litigant? Let me add one factor to the mix, which is you suggest there might be preclusion concerns. But if the first complaint, the existing complaint, is disposed of on jurisdictional grounds, as Judge Friedland has noted customarily, that would be without prejudice, that bar wouldn't seem to exist. So I really come back to the concern, I'm not sure what difference, practical difference, this really makes in the long run. Well, obviously the practical difference is that for the litigants and for my client, continuing to be dragged through this is significantly burdensome. If the alternative is being sued once again... Well, and I guess that's my point, Judge Clift, and it's far from clear to me that it actually would be appropriate to be able to be sued once again. I mean, the Allen rule is meant to prevent that. It is meant to say... Well, does it speak to, and I haven't explored this, but this is unusual in that the original claim is disposed of on grounds that aren't preclusive. If it's disposed on jurisdictional grounds, then it's without prejudice. And so I would anticipate, my guess is that, Allen, in most of the cases I've seen where we fight over leave to amend, you've got preclusion concerns. I'm not sure that's the case here. Well, I do think that, again, we're in a bit of an odd posture because obviously the district court did address the merits of this and did say to them, all right, I've thought about whether you should get leave to amend, and you don't, and now you've come back and filed this proposed amended complaint, which we think would be futile for all of the reasons I've articulated. And so this isn't just the ordinary case in which someone comes in, they file a defective complaint, they get knocked out on Article III grounds, and then they live to fight another day. I mean, we've already been through the wars on this. This is kind of odd, though, because you'd like us... I mean, you've argued we don't have jurisdiction. I kind of am inclined to agree with you, but really you want us to say we do have jurisdiction and reach the merits, because that's the only way you'll have a preclusion argument, right? That's the only way you can bar the next suit, because if we say we have no jurisdiction, then it's dismissed for lack of jurisdiction, which has no preclusive effect. I mean, again, Judge Friedland, I actually think because of the unusual posture in which we find ourselves, I think the question is a little bit harder about whether there would be preclusive effect here, precisely because they already got their shot at this. I mean, again, it feels very odd to me to think... All of that shouldn't have happened, right? They shouldn't have had... I mean, there's no... The court should have dismissed for lack of jurisdiction on your theory. I hear you, Judge Friedland, and I don't want to fight too hard about the basis on which we might prevail here. I mean, this is a happy box to find myself in. But I do think that the circumstances of this are quite unusual. If one approaches it from the perspective of Judge Liu, and we've got a litigant who had their shot, they filed their claim, they said, here are our legal theories, and they lost, and then they're trying to get a second bite at the apple on it. It's very weird to say, all right, well, because there actually wasn't jurisdiction, we're going to give you the do-over that you weren't entitled to in the first go-round. So your point is that they've already had their second shot, and they should be... That's the basis for... I don't know if you want to call it a stopple or a preclusion or whatever it is. It's the point that they've already had their second shot and shouldn't have a third bite at the apple. Would that preclude... If we were to say that Judge Liu was correct in not allowing a further amendment based on what he saw, would that... But we ruled on jurisdictional grounds. Wouldn't it still be open for the plaintiff to go back into state court and seek relief? The short answer is I really don't know, Your Honor. I suspect that there would be a battle over that someday because there have been many battles before. I would just emphasize the point if we're thinking about dismissals without prejudice and leave to amend, this is not the case of the hapless pro se litigant who didn't quite get over Rule 9 or didn't quite get the RICO allegations right, and now they're attempting to plead some additional new facts to get an inference that they're not entitled to otherwise. This is a sophisticated litigant represented by sophisticated counsel that picked a legal theory, lost on it, and as Judge Liu recognized, was trying to get a second bite at the apple on a new legal theory, and they're just not entitled to that. Tasty apple. Maybe you want a second bite. Or a third. Only one bite at every apple, Your Honor. Dried and fresh. Thank you very much. Thank you. If I may, in the very brief time I have, address the issue of futility and leave to amend. And I'm not aware of any doctrine that says the leave to amend standard is different if you're represented by a firm or a sophisticated counsel. It's supposed to be granted liberally. Now the court below found that the amended complaint was futile because in its view, the new claims were ACPA claims in disguise. And that is simply not the case. Each of the causes of action have elements that have nothing to do with whether the Dr. Del Monte name was registered or entered into the root zone. The relief we're seeking is a declaration, and this is on page record site ER 79, a declaration that the defendant breached the license agreement by preventing Del Monte International from using the mark in connection with the sale and distribution of its products. That we haven't violated the license agreement by merely applying for the GTLD application. Declaring that we are not barred by the license agreement from pursuing GTLD applications. Those are not ACPA claims in disguise. They have nothing to do with the grounds on which the court found there was no jurisdiction to hear the ACPA claim, and therefore are certainly not futile, Your Honors. Thank you. Thank you. We thank both counsel for your helpful arguments in this complicated and interesting case. The case just argued is submitted. That concludes our calendar for this morning and we're adjourned. All rise.
judges: Clifton, Friedland, Chen